IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rebecca S. Clark, | ) | C/A No. 0:11-3083-SB-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Rebecca S. Clark ("Clark"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions[1] and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

### ADMINISTRATIVE PROCEEDINGS

In January 2007, Clark applied for DIB, alleging disability beginning June 1, 2003. (Tr. 79.) Clark's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A video hearing was held on April 30, 2009, at which Clark, who was represented by David Hood, Esquire, appeared and testified. During the hearing, Clark amended her alleged onset date to June 22, 2005. The ALJ issued a decision on June 1, 2009 finding that Clark was not disabled. (Tr. 9-15.)

---

[1] The court notes that Clark's reply brief was untimely filed. However, even if the court were to consider it, it would not change the court's recommendation in this matter.

Clark was fifty-seven years old at the time of her amended alleged disability onset date. (Tr. 79.) She has a high-school education and past relevant work experience as a reservations manager at a dinner theater and as a claims representative at an insurance company. (Tr. 109, 114.) In her application, Clark alleged disability due to chronic obstructive pulmonary disease ("COPD"), fibromyalgia, sciatic nerve pain, degenerative discs in her lower back, bronchitis, emphysema, high blood pressure, chronic sinus issues, thyroid disorder, myopathy in her right leg, and gastroesophageal reflux disease ("GERD"). (Tr. 108.)

The ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her amended onset date of June 22, 2005 through her date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, COPD, and osteoporosis (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

\* \* \*

5. . . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

\* \* \*

6. Through the date last insured, the claimant was capable of performing past relevant work as a claims representative. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 22, 2005, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(f)).

*PJG*

(Tr. 11-15.) On September 15, 2011, the Appeals Council denied Clark's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie*

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

PJG

case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

*PJG*

**ISSUES**

Clark raises the following issues for this judicial review:

I. The ALJ failed to perform an analysis of Clark's ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. § 404.1520.

II. The ALJ failed to properly assess the treating physicians' opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

III. The ALJ failed to explain Clark's residual functional capacity findings.

(Pl.'s Br., ECF No. 21.)

**DISCUSSION**

Clark argues that the ALJ failed to properly assess the opinions of treating physicians Dr. George M. Sandoz and Dr. Thomas Chandler, Jr. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not

Page 5 of 11
PJG

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

In July 2008, approximately seven months after Clark's date last insured, Dr. Sandoz completed a medical statement in which he indicated that Clark suffered from significant peripheral neuropathy that resulted in moderate and persistent disorganization of motor function in two extremities, resulting in moderate disturbance of gross and dexterous movements, or gait and station. (Tr. 616.) Dr. Sandoz found that Clark could work two to four hours per day; could stand for thirty minutes at one time and sixty minutes in a workday; could lift twenty pounds on an occasional or frequent basis; and could occasionally bend, stoop, balance, perform gross and fine manipulation with both hands, work around dangerous equipment, and operate a motor vehicle. (Id.) Dr. Sandoz also opined that Clark suffered from moderate pain. (Tr. 616-17.)

In August 2008, approximately eight months after Clark's date last insured, Dr. Chandler completed a medical statement regarding chronic obstructive pulmonary disease ("COPD"). (Tr. 618-19.) Dr. Chandler diagnosed Clark as suffering from dyspnea on exertion, chronic cough, sputum production, and lung hyperinflation, and noted that supplemental oxygen had not been prescribed for Clark. (Tr. 618.) Dr. Chandler found that Clark could stand for fifteen minutes and sit for two hours at one time; could work two hours per day; could lift five pounds occasionally and zero pounds frequently; and could not tolerate dust, smoke, and fumes. (Tr. 619.)

The ALJ accorded less than controlling weight to these two opinions for the sole stated reason that he found them to be chronologically distant from Clark's date last insured. (Tr. 14.) Clark argues that, as treating physicians, the opinions of Dr. Sandoz and Dr. Chandler are entitled to greater weight. In support of her argument, Clark points out that both Dr. Sandoz and Dr. Chandler had treated Clark prior to her date last insured. A review of the medical records reveals

PJG

that Dr. Chandler began treating Clark in February 2005 and saw Clark on approximately ten occasions prior to her date last insured. (Tr. 305-20, 478-89.) Similarly, Dr. Sandoz began treating Clark in January 2007 and saw Clark approximately six times prior to her date last insured. (Tr. 437, 447-50, 549-52, 563-64.) Relying on the case of <u>Owens ex rel. Metcalf v. Barnhart</u>, 444 F. Supp. 2d 485 (D.S.C. 2006), Clark argues that because the opinions of Dr. Chandler and Dr. Sandoz relate to their assessment of Clark's condition during the relevant period prior to her date last insured and because these treating physicians had medical knowledge of Clark's condition such that they were able to provide an opinion, the opinions of these treating physicians should not have been given less than controlling weight by the ALJ on the basis that they were "chronologically distant."

Clark further argues that the treatment records of Dr. Chandler subsequent to Clark's date last insured but prior to the issuance of his August 2008 opinion do not demonstrate any worsening of Clark's condition. Review of these treatment records reveals that on April 1, 2008 at a scheduled follow-up visit, Dr. Chandler noted that Clark was still smoking, that she suffered from dyspnea if she overexerted herself but that otherwise she denied any respiratory complaints, and that she was not compliant with her inhalers. (Tr. 602.) Dr. Chandler concluded that Clark should remain on her currently prescribed treatment and recommended she continue with regular evaluations to ensure stability. (<u>Id.</u>) Similarly, on August 5, 2008, Dr. Chandler saw Clark for her scheduled follow-up appointment and noted that Clark was using her inhalers but "didn't stick" with the Chantix. (Tr. 604.) Dr. Chandler also noted that Clark appeared to have successfully quit smoking, and again concluded that she remain on her prescribed treatment and recommended that she continue with regular evaluation to ensure stability. (Tr. 606.)

Clark also states that Dr. Sandoz treated Clark just prior to her date last insured in December 2007 and did not see her again until after the issuance of his July 2008 opinion, arguing that Dr.

Sandoz's opinion must, therefore, be based on Clark's condition prior to her date last insured. The court notes for the sake of accuracy that the record actually reveals that prior to Dr. Sandoz's July 31, 2008 opinion Clark was seen by Dr. Sandoz on July 3, 2008 related to problems with her vision, and on July 15, 2008 for subjective complaints of a stiff leg and decreased ability to perform activities of daily living. (Tr. 567, 571-72.) Nevertheless, neither of these records appear to indicate that Clark's condition had worsened or was worsening. On the contrary, Dr. Sandoz opined on July 15, 2008 that Clark's "symptomatology appears to be stable" and that she had "had no other symtomatology since the last visit." (Tr. 571.)

In response to Clark's arguments, the Commissioner argues that the ALJ stated that he carefully considered the entire record and that "it is clear from the ALJ's discussion and ultimate assessment of [Clark]'s residual functional capacity that he considered, but did not accept, the limitations in Drs. Sandoz and Chandler's opinions . . . ." (Def.'s Br., ECF No. 22 at 9.) While the ALJ did note that the medical records showed that Clark did not require extensive treatment for her COPD, degenerative disc disease, and osteoporosis during the relevant period, his only stated reason for discounting the above-discussed opinions of Dr. Chandler and Dr. Sandoz was that they were "chronologically distant" from Clark's date last insured. However, like those at issue in Owens, the opinions offered by Clark's treating physicians appear to relate to their assessment of Clark's condition during the relevant time period and appear to be based on their evaluation of her at that time. Further, nothing in Dr. Chandler's and Dr. Sandoz's medical records subsequent to Clark's date last insured indicate that her condition had materially worsened. The fact that these opinions were not reduced to writing until later alone does not appear to constitute "persuasive contrary evidence" for giving them less than controlling weight. See Owens, 444 F. Supp. 2d 485; Mastro, 270 F.3d at 178. Accordingly, the court is unable to conclude that the ALJ's decision with regard

PJG

to the opinions of Dr. Chandler and Dr. Sandoz is supported by substantial evidence. See Johnson, 434 F.3d at 654 (listing some of the factors for evaluating and weighing a treating physician's opinion). In addition, Dr. Chandler's opinion that Clark suffered from chronic cough—to which Clark also testified during her hearing—does not appear to have been addressed by the ALJ to the extent that it may affect Clark's ability to perform her past relevant work as a claims representative. While discussion of these treating physicians' opinions may not ultimately change the ALJ's decision,[3] the failure of the ALJ to discuss any valid reason for not according them significant weight prevents the court from determining that the ALJ's decision to discount these opinions is supported by substantial evidence and consistent with controlling law. See SSR 96–2p (requiring an ALJ to give specific reasons for his decision to discount a treating physician's opinion). Therefore, the court is constrained to recommend remanding this matter for further consideration.

Further consideration of the treating physicians' opinions may directly impact Clark's remaining issues, including arguments relating to her credibility, alleged neuropathy, and residual functional capacity determination. In light of the court's recommendation that this matter be remanded for further consideration of these opinions, the court need not address the plaintiff's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Clark may present her remaining arguments on remand, such as that the ALJ did not properly consider Clark's reasons for being unable to perform her past relevant work as a claims representative. (See Pl.'s Br., ECF No. 21 at 15-22.)

---

[3] The court notes that it expresses no opinion as to whether further consideration of the treating physicians' opinions would entitled Clark to disability benefits.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 5, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).nsdal/go;sefhoisrhig